In Re: Appeal of George Baker, Jr. From the Decision of the Zoning Hearing Board of Franconia Township, Montgomery County, Pennsylvania. George Baker, Jr., Appellant.

Argued April 4, 1975, before Judges KRAMER, WILKINSON, JR., and BLATT, sitting as a panel of three.

*Stanford S. Hunn,* with him *Hunn* and *Dischell,* for appellant.

*Clarke F. Hess,* with him *Walton B. Yoder, Jr., P. Glenn Moyer* and *Butera & Detwiler,* for appellee.

OPINION BY JUDGE KRAMER, May 22, 1975:

This is an appeal by George Baker, Jr. (Baker) from an order of the Court of Common Pleas of Montgomery County, dated July 15, 1974, which affirmed an order of the Franconia Township Zoning Hearing Board (Board), denying Baker a special exception.

Baker is the owner of a 6.23 acre tract on which he proposes to build 36 townhouses. The most prominent feature of the land is its bisection by a flood plain which runs the entire length of the property, a distance of about 900 feet. The flood plain is approximately 150 feet wide, by the Board's estimate and finding, and 75 feet wide, by the estimate of Baker's engineer.

The lower court took no additional evidence and did not make independent findings of fact. In such circumstances, our scope of review is limited to determining whether the *Board* abused its discretion, committed errors of law, or based its conclusions upon findings of fact which are not supported by substantial evidence. *Robin Corporation v. Board of Supervisors of Lower Paxton*

*Township,* 17 Pa. Commonwealth Ct. 386, 332 A.2d 841 (1975) ; *Rothrock v. Zoning Hearing Board of Whitehall Township,* 13 Pa. Commonwealth Ct. 440, 319 A.2d 432 (1974).

Special exceptions are authorized by section 913 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10913, where the following provision is found:

> "Where the governing body in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria. In granting a special exception, the board may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance."

A substantial body of decisional law has developed in this area, and certain basic principles relating to the granting of special exceptions are well established.

A landowner who is entitled to a special exception is pursuing a permitted use, conditioned only upon his showing that all of the requirements of the relevant ordinance for the particular exception requested have been met. *Township of Marple v. Ford,* 13 Pa. Commonwealth Ct. 192, 318 A.2d 414 (1974) ; *West Whiteland Township v. Exton Materials, Inc.,* 11 Pa. Commonwealth Ct. 474, 314 A.2d 43 (1974). Uses permitted through special exception are not violations of the ordinance, and in this respect special exceptions differ from variances. *Township of Haverford v. Spica,* 16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974) ; *Brunner v. Zoning Hearing Board of Upper Makefield Township,* 12 Pa. Commonwealth Ct. 109, 315 A.2d 359 (1974). The burden of establishing that the requirements of the ordinance relating to the particular exception requested have been satisfied is upon

the applicant, and must be carried by "competent and sufficient evidence." *Jones v. Zoning Hearing Board,* 7 Pa. Commonwealth Ct. 284, 298 A.2d 664 (1972); *Lindenwood Corporation v. Township of Upper Darby,* 6 Pa. Commonwealth Ct. 558, 297 A.2d 547 (1972). Once this burden has been discharged by the applicant, the special exception may be denied only upon a showing by protesting parties (or by the municipality) that the proposed use would have an adverse effect on the public health, safety or welfare which countervails the benefit to the landowner in having his use approved. The burden of making this latter showing is upon the protestants, as many cases have held. *Township of Marple v. Ford, supra; West Whiteland Township v. Sun Oil Company,* 12 Pa. Commonwealth Ct. 159, 316 A.2d 92 (1974); *West Whiteland Township v. Exton Materials, Inc., supra.*

Our first inquiry in the instant case, therefore, is to determine whether Baker has proven that his proposed use is in compliance with the ordinance, and, if so, whether any protesting party has succeeded in showing that the townhouse development would adversely affect the public health, safety or general welfare. More specifically, we must examine the Board's treatment of these questions, in light of our scope of review noted above.

Initially, the parties disagree on the interpretation and application of the Franconia Township zoning ordinance. This is purely a question of law. Townhouses are permitted as special exceptions pursuant to section 2103 of the ordinance, which reads as follows.

"When approved by the Zoning Hearing Board *as a special exception where authorized in this Ordinance,* the use and development of land for townhouses *shall comply with the following regulations.*" (Emphasis added.)

Sections 2104 and 2105, appearing immediately after this section in the ordinance, provide a detailed set of area,

width and "development" requirements, all of which are express conditions to the granting of a special exception for townhouse development.

The Board's power is established in section 1701 (B) of the ordinance, which contains the following provision:
"The Board shall have the following powers:

. . . .

"B. Special Exceptions. To hear and decide special exceptions to the terms of this Ordinance in such cases as are herein *expressly* provided for, *in harmony with the general purposes and intent of this Ordinance with power to impose appropriate conditions and safeguards.*" (Emphasis added.)

By implication the Board (and the court below) construed these provisions to require that Baker's application be considered in light of section 2100 of the ordinance, which represents the "Statement of Community Development Objectives" required by section 606 of the MPC, 53 P.S. §10606. Section 2100 (4) lists, as a purpose of the ordinance, "[t]o assure that the designs of multi-family residential land development is [sic] integrated and compatible with the environment of adjacent and nearby land uses." The Board found, *inter alia,* that, "[t]he buildings are placed parallel to existing property line giving no consideration to contour and natural features of the land." Baker now contends that the Board erred by considering, in the first part of its analysis, any requirements other than those found in section 2401 and 2105 of the ordinance.

We agree with Baker that the finding noted above undoubtedly indicates that the Board was, in effect, requiring Baker to respond to a requirement not found in sections 2104 and 2105. A close examination of the ordinance also leads us to the conclusion that section 2100 (4) was not intended to be a mandatory provision, to which an applicant for a special exception must demonstrate compliance. The general, policy-oriented language of section 2100 militates against such an interpretation, as

does the fact that sections 2104 and 2105, which are extremely detailed, seem obviously designed to implement the policy statement contained in section 2100. We must conclude that sections 2104 and 2105 of the ordinance, which by themselves seem burdensome to the applicant, were intended by the draftsmen to constitute the sole conditions to the issuance of a special exception for townhouse development. Indeed, were this not so, serious constitutional problems might be raised by requiring that the applicant for a special exception meet vague, nebulous guidelines which lend themselves to arbitary application.[1] It is in the nature of a special exception to require that the applicant meet reasonably definite conditions, and it would be manifestly unfair to require him to prove conformity with a policy statement, the precise meaning of which is supposed to be reflected in *specific* requirements such as those found in sections 2104 and 2105. Any other view would enable the Board to assume the legislative role of the Township Supervisors, who, having conceived the policy behind the ordinance, have presumably translated that policy into concrete requirements. We cannot permit the Board to legislate additional conditions upon the applicant.

Turning to the question of whether the Board was justified in finding that Baker failed to demonstrate compliance with sections 2104 and 2105, we note that section 2104(A) provides that the total "lot area" of any townhouse development shall not be less than five acres. Section 2105(A) further provides that there shall be no more than six units per acre.

---

1. Our reference to constitutional problems is prompted by the fact that townhouses are only permitted in residential areas of Franconia Township through special exception. The ordinance thus seems to attempt to cure the problems which might be raised by an allegation of exclusionary zoning. *See Girsh Appeal,* 437 Pa. 237, 263 A. 2d 935 (1970).

As noted above, a substantial portion of Baker's tract is a flood plain, and section 1203(1) of the ordinance supplies a definition of "lot area" when portions of a tract lie within such a plain. This section reads, in relevant part:

"Inclusion of flood plain lands within the residential lots in order to meet minimum lot area or yard requirements is contingent upon complying with the objectives and standards set forth in the Declaration of Legislative Intent of this ordinance (Section 1200) and with any other pertinent municipal regulations. If such compliance cannot be shown, the land area within the flood plain conservation district shall not be calculated for purposes of determining lot areas or yard requirements."

Sections 1200(5) and (6) read as follows:

"5. *To permit* certain uses which can be appropriately located in the flood plain as herein defined and which will not impede the flow of flood water, or otherwise cause danger to life, and property at or above or below their locations along the floodway.

"6. *To permit* only those uses in the flood plain compatible to the preservation of natural conditions which are conducive to the maintenance of constant rates of water flow throughout the year by (a) withholding rapid water run-off contributing to downstream flooding and (b) providing area for groundwater absorption for maintenance of the sub-surface water supply." (Emphasis in original.)

We note that section 1200, like section 2100 discussed above, represents a statement of legislative intent. We have no difficulty, however, in finding that requiring compliance with section 1200 is permissible, since (1) section 1203(1) specifically directs that such compliance be found; and (2) the standards described in sections 1200(5) and (6) are reasonably concrete.

The Board found, *inter alia,* that (1) Baker plans to store vehicles and trash in the flood plain area; (2) Baker proposes to alter the watercourse and construct nonpermeable parking lot surfaces within the flood plain which will disturb the natural absorption of ground water; and (3) that water runoff will be greatly increased by the addition of the nonpermeable surfaces of a junior high school presently under construction upstream and that these increases cannot be fully accounted for at present. Additionally, the Board found that "[t]he alteration of swales[2] will result in a greatly increased run-off rate with less percolation, especially with the high percentage of area covered by non-permeable parking surface, sidewalks, and roofing resulting in a greater flow downstream. The plan . . . does not consider the effect of this increased flow on downstream residents."

All of the above findings are supported by the record and, in light of sections 1200(5) and (6), justified the Board in concluding that compliance with those sections was not shown. From the evidence it is clear that, at the very least, the downstream effects of Baker's project are uncertain and there is a strong possibility that absorption levels will be affected due to the elimination of marshy areas and the addition of nonpermeable surfaces.

The total area of Baker's tract is 6.23 acres, and, using *his* figures,[3] six-tenths of an acre of the total is

2. Webster's Third New International Dictionary (1971) defines "swale" as "an elongated depression in land that is a least seasonally wet or marshy, is usually heavily vegetated, and is normally without flowing water."

3. We note that using the Board's figures, taken from the Soil Survey of Montgomery County, only 4.58 acres of the tract are useable. This is less than the amount required to build any townhouses at all under section 1204(A). In the portion of his brief denoted "History of the Case," Baker describes the flood plain as 150 feet in width, and this is the figure used by the Board. Baker's plans indicate that the plain is only 75 feet in width.

flood plain. Since the Board properly found that Baker had not shown compliance with sections 1200 (5) and (6), he was not entitled, under section 1203 (1), to include the area represented by flood plain in his calculation of overall lot size. With only 5.63 useable acres, Baker cannot, under section 2105 (A), construct the 36 townhouses his plan envisages, since there must be no more than six units per acre. Six useable acres are required.

Baker argues that a prohibition of more than six units per acre is unconstitutional because it bears "no reasonable relationship to the traditional police power goals of zoning." No cases are cited involving a regulation such as the one in question, and Baker's argument on this point embraces little more than an assertion of unconstitutionality. We have no difficulty in holding that the six unit per acre limitation is reasonable, considering that this formula allocates only one-sixth acre of the overall project for each family. *See Hess v. Upper Oxford Township,* 17 Pa. Commonwealth Ct. 399, 332 A.2d 836 (1975) and *Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 11 Pa. Commonwealth Ct. 607, 314 A.2d 565 (1974). Baker's contention that the six unit per acre limitation represents *de facto* exclusionary zoning is without merit.

We do not mean to imply, however, that our holding on this point applies to the five-acre requirement of section 2104 (A). That section requires an overall lot size of five acres before even one townhouse unit can be built. We need not deal with the constitutionality of section 2104 (A), since section 2105 (A) provides a sufficient independent basis for the Board's conclusion that all of the requirements for a special exception have not been met. We note as well that we do not reach the issue of whether the protestants have met their burden of proving that Baker's development will adversely affect the public health, safety, or welfare. In light of the above, we

ORDER

AND NOW, this 22nd day of May, 1975, the order of the Court of Common Pleas of Montgomery County, dated July 15, 1974, which affirmed the denial of a special exception to George Baker, Jr., is affirmed.