# In re Appeal of U.S. Magnet & Alloy Corporation

*Lawrence I. Tomar,* for Yardley Borough

*Robert Stengel and Joseph Caracappa,* for U.S. Magnet & Alloy Corp.

*H. John Witmann III,* for Yardley Borough Zoning Hearing Board

GARB, *P.J.,* July 22, 1987 — This is an appeal from the denial by the Yardley Borough Zoning Hearing Board of appellant's application for a special exception. Upon our review of the record of the proceedings before the board, we affirm.

We received no evidence. Rather, we reviewed the entire record from the board. In this posture, our scope of review is to determine whether the board committed a manifest abuse of discretion or an error of law. *Zoning Hearing Board vs. Konyk,* 5 Pa. Commw. 466, 290 A.2d 715 (1972); *Philadelphia vs. Angelone,* 3 Pa. Commw. 119, 280 A.2d 672 (1971); *Clemens vs. Upper Gwynedd Township Zoning Hearing Board,* 3 Pa. Commw. 71, 281 A.2d 93 (1971).

All of the facts necessary to the determination of this case are found in the findings of fact of the

board. All of them are supported by competent evidence. Based upon them, the facts of this are as follows. Appellant herein is a publicly held company of approximately 800 shareholders. It is the equitable owner of the property in question which consists of approximately 27 acres of land in Yardley Borough composed of two contiguous parcels identified as Bucks County tax map parcels 54-1-32 and 54-1-123. The first of the aforesaid parcels consists of approximately 24 acres and has road frontage on both North Main St. and West Afton Ave. in Yardley. It is zoned I-1. The second parcel consists of approximately three acres and has frontage on West Afton Ave. in Yardley. It is zoned R-1, low density residential.

There are improvements upon the property located almost exclusively on the larger of the two parcels and consisting principally of a building of approximately 150,000 sq. ft. Appellant is the principal user of this building, conducting an operation or process for the production, inter alia, of magnets using 60,000 sq. ft. of this building. The only improved access to this property is from North Main St.

Forty-five thousand sq. ft. of this building is the original stone structure constructed for the operations of the Cold Spring Bleachery, which was an industrial use. This portion of the building is currently unoccupied as are substantial other portions of the building. It is appellant's proposal to renovate this original stone structure consisting of 45,000 sq. ft., and to add a second story so that it may develop as a 90,000 sq. ft. facility for general office use. In stating its proposal, appellant would purport to use this 90,000 sq. ft. office space for general administrative offices, "corporate headquarters," "high-tech" facilities and computer and electronic "headquarters."

A special exception is permissible where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted or found to exist. A special exception is not an "exception" to a zoning ordinance. It is a permitted use which an applicant is entitled to have, unless the board determines, according to the standards of the zoning ordinance, that the use would adversely affect the community. *Zoning Hearing Board vs. Slavitz*, 3 Pa. Commw. 495, 284 A.2d 337 (1971); *In re Appeal of George Baker*, 19 Pa. Commw. 163, 339 A.2d 131 (1975) and *Brunner vs. Upper Makefield Township Zoning Hearing Board*, 12 Pa. Commw. 109, 315 A.2d 359 (1974). Therefore, a special exception is a permitted use within the provisions of the zoning ordinance. *Kaiserman vs. Springfield Township*, 22 Pa. Commw. 287, 348 A.2d 467 (1975). A special exception must be granted where the proposed use is one which is specifically set forth in the zoning ordinance as permissible upon grant of a special exception. This is true unless it is demonstrated that the proposed use is in some way detrimental to the public health, safety or welfare. In this case, it is agreed by all that the sole question is whether the proposed use is one permissible by special exception.

The uses permissible in I-1 Industrial District are set forth in section 601 of the zoning ordinance. Section 601.2A sets forth the uses permitted by right as follows.

"Section 601.2A

"(1) Manufacturing: These uses shall include the production, processing, cleaning, testing and distribution of materials, goals, (sic) food stuffs and products, but not limited to:

"(a) The fabrication of products from the following: metals, plastics, glass, leather, wood, paper, clay, rubber, other chemicals and fibers;

"(b) Electronics;

"(c) Bottling of beverages and processing and packaging of food; and

"(d) Painting, printing or binding.

"(2) Research: Such uses shall include a research or testing facility, and an experimental laboratory.

"(3) Wholesale/warehousing: These uses include wholesale distribution and/or warehousing, and/or storehousing.

"(4) Mini-storage: such use shall include the storage of items limited to personal property generally stored in residential structures, within a warehouse structure as mini-warehouse structures provided:

"(a) Such use shall be surrounded by a physical barrier measuring at least six feet in height;

"(b) The minimum driveway width between buildings shall be 20 feet;

"(c) No such structure shall exceed 60,000 sq. ft. in size;

"(d) No business activity other than leasing of storage units shall be permitted;

"(e) All storage shall be with enclosed buildings; and

"(f) Explosives, radioactive or highly flammable materials shall be prohibited.

"(5) Contracting: This use shall include offices and supply shops such as building, cement, electric, heating, plumbing, masonry, painting and roofing.

"(6) Lumber yard: Such use shall include a lumber yard but shall exclude a planing mill.

"(7) Indoor Athletic Club: Such use shall include buildings for indoor court games, for games played with a ball, such as racquetball, handball, squash, tennis, basketball and volleyball, and facilities related thereto, provided that no facilities shall be pro-

vided in any such club to accommodate more than two spectators for each court, nor shall more than two spectators (other than game participants and club employed) for each court be permitted in the club at any one time.

"8. Institutional uses: Public utilities

"Section 601.2B Accessory Uses

"Accessory uses shall be permitted provided they are customarily incidental and subordinate to the uses permitted by right listed above. . . ."

Clearly, by no stretch of the imagination can the proposed use in this case be construed as being one of the permitted uses as provided herein. Section 601.2D provides as follows.

"Section 601.2D Special Exceptions

"Uses not specifically listed but of the *same general character* as the uses listed may be permitted by special exception subject to the provisions of section 1305. (emphasis added).

The narrow question, therefore, for determination herein is whether the proposed office use can be construed as of the "same general character" of the permissible uses. We determine that such does not, and therefore the board did not err.[1]

We have found no cases defining the phrase "same general character." In the Revised Fourth Edition of Black's Law Dictionary, we are told that the word "same" does not always mean "identical." It frequently means of the kind of species, not the specific thing. We would presume that that concept has some meaning in determining what is contem-

---

1. See *Cook v. Zoning Hearing Board of the Township of Ridley,* 47 Pa. Commw. 160, 408 A.2d 1157 (1979) holding that the determination of whether a proposed use is of the "same general character" as the permitted uses is a question of law.

plated by the ordinance as "same general character." It cannot mean exactly the same because then there would be no reason for separate uses by special exception. Obviously it has to mean something different to some degree, at least, than the specifically permitted uses. There is clearly no suggestion in the list of permitted uses of any intention by the framers of this ordinance to permit independent business or professional office use in this zone. Obviously most of the permitted uses would of necessity require some facility for the transaction of record-keeping and business activity. Generally speaking, factories, laboratories, lumber yards and athletic clubs have office components. Obviously the purpose of these office components is to facilitate the transaction of the activities primarily contemplated to occur on the premises as in the nature of manufacturing, research, warehousing, recreation or the sale and processing of lumber and related products. This use, of course, is accommodated in subsection B wherein accessory uses are specifically permitted. The only specific reference to any type of office, among these uses, has to do with "contracting" wherein it is provided that that use shall include "offices" and supply shops. Here again, however, it is obvious that the contemplation is of a contractor's yard and premises as opposed to merely a free-standing office. Therefore, we conclude that general office use is not of the "same general character" of the permissible uses in I-1 Industrial District. Little is added by the cosmetic terms "corporate headquarters" or "hi-tech." Those terms have little meaning in zoning parlance and certainly do not somehow convert an office into a place for research or manufacturing.

For the foregoing reasons we determine that the zoning hearing board did not commit a manifest

abuse of discretion or an error of law. Therefore the order of the board will be affirmed.

## ORDER

And now, this July 22, 1987, it is hereby ordered that the order of the zoning hearing board of October 22, 1985, denying the application for special exception is affirmed.