# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William and Wendolyn Hewitt    :
            :
     v.       :
            :  No. 1342 C.D. 2018
Hellam Township Board of Supervisors : Argued: April 11, 2019
            :
     v.       :
            :
Gary Geiselman, Suzanne McConkey, :
Adrienne Johnson, and Devin Winand, :
        Appellants :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**     **FILED: June 26, 2019**

   Gary Geiselman, Suzanne McConkey, Adrienne Johnson, and Devin Winand (Objectors) appeal from an Order of the Court of Common Pleas of York County (common pleas), which granted William and Wendolyn Hewitt's (Applicants) appeal from a decision of the Hellam Township Board of Supervisors (Board) and reversed the Board's decision denying Applicants' conditional use application (Application) to operate a Winery, Type B. On appeal, Objectors argue common pleas erred in reversing the Board's decision, claiming Applicants did not provide a detailed written plan for noise control as required by the Hellam

Township Zoning Ordinance (Ordinance). In addition, Objectors argue common pleas erred because Applicants did not demonstrate the proposed use would not detract from the use or enjoyment of nearby properties or otherwise change the character of the neighborhood. Finally, Objectors assert common pleas erred because the principal use is a winery, which is only allowed as an accessory use to a vineyard, which does not yet exist. Upon review, we find common pleas erred in concluding Applicants met the specific, objective requirements for noise control, as set forth in the Ordinance. As a result, we must reverse.

## I.    BACKGROUND

Applicants are equitable owners[1] of 4865 Libhart Mill Road in Hellam Township, York County, Pennsylvania (the Property).[2] The Property is located in a Rural Agricultural Zone (RA Zone). In an RA Zone, "[w]ineries are permitted only as an accessory use[3] to the principal use of the property as a vineyard[.]" (Ordinance § 490-130.1.) "Vineyard" is defined as "[g]round planted with grapevines cultivated for the purpose of commercially producing wine. A vineyard is an agricultural use where grapes and/or other wine-producing crops are grown." (*Id.* § 490-11.C.) The Ordinance differentiates between two kinds of wineries: a Winery, Type A, which is a permitted use in the RA Zone, and a Winery, Type B, which is permitted only as a conditional use in an RA Zone. (*Id.* §§ 490-12.B(13), 490-12.C(30).) "Winery, Type A," is defined, in pertinent part, as "[a] facility

---

[1] The Estate of Evamae Crist is the legal owner of the Property but has an agreement of sale with Applicants, contingent upon approval of the conditional use.

[2] The Property is comprised of two parcels: one of which is 6 acres and the other of which is 10.62 acres. (Board Decision, Finding of Fact (FOF) ¶ 2.)

[3] "Accessory use" is defined as "[a] use on the same lot with, and of a nature customarily incidental and subordinate to, the principal use or structure." (Ordinance ¶ 490-11.C.)

specially designed to allow processing of grapes and other fruit products or vegetables, to produce wine or similar spirits." (*Id.* § 490-11.C.) On-site sales of wine are not allowed at a Winery, Type A. In contrast, "Winery, Type B," encompasses the definition of Winery, Type A, but "also includes retail and wholesale sales of wine, catering areas, banquet areas or rooms, halls, winery events, tours, picnic areas, food service and a tasting facility." (*Id.*) Winery events include activities such as weddings and receptions that are "considered an accessory function" of a Winery, Type B. (*Id.*)

## A.    **The Application and Hearings**

On October 27, 2017, Applicants filed their Application seeking a conditional use to operate a Winery, Type B, on the Property.[4] Applicants planned to convert the existing barn into a wedding/event venue for up to 230 people, reside in the existing home, and continue farming the Property, at least two to five acres of which would be planted with grapes to produce wine. (Reproduced Record (R.R.) at 2a, 4a.) Pertinent to this appeal, the Applicant provided the following in relation to noise:

> The events will be mainly indoor events, except for outdoor wedding ceremonies, and other approved uses as set forth for winery B. These will take place on the interior part of the property to minimize noise. We also plan to insulate the barn to reduce noise.
>
> We will be installing a sound system that we can control. Our contract will include verbiage so that those renting understand noise concerns. We will be closely monitoring [sic.]

---

[4] Initially, Applicants also sought to operate a bed and breakfast but subsequently withdrew that portion of their Application.

(*Id.* at 4a.)

In November 2017, Applicants presented their plans to the Hellam Township Planning Commission, which voted 4-1 in favor of recommending approval. (*Id.* at 30a-31a.) The Board held hearings on the matter on December 21, 2017, and January 18, 2018. (*Id.* at 37a-39a, 44a-46a.)

Mr. Hewitt elaborated on Applicants' plans at the first hearing. He testified as follows. Applicants would remove the barn's existing siding and install 2½-inch thick insulation to certain walls. (*Id.* at 123a.) They would also install a sound system, which they would control. (*Id.* at 126a.) Based upon concerns of neighbors, Applicants agreed to move an 88-space parking lot behind the barn to minimize the effect of lights and sound. (*Id.*) Applicants would continue to contract with a neighboring farm to grow hay on approximately six acres but were planning to plant grapes as well. (*Id.* at 125a.) It would take three years to get the first crop of grapes once they were planted. (*Id.* at 129a.) Applicants needed to get cash flow from the wedding/event venue to fund planting. (*Id.*) Because no grapes or other wine-producing crops had already been planted, Board's Solicitor (Solicitor) advised the Board it could include a deadline for planting as a condition of approval. (*Id.* at 142a.)

A number of residents, including Objectors, also testified at the first hearing and opposed the proposed plan. One resident who lives directly across from the Property was concerned about noise and suggested Applicants construct two walls with insulation between them to minimize noise. (*Id.* at 158a-59a.) Mr. Hewitt responded that was the plan. (*Id.* at 159a.) Another resident testified that 10 residents live within 500 feet of the Property, the closest of which was 180 feet. Because of topography, she testified sound would be amplified and described the valley as "virtually a natural amphitheater." (*Id.* at 192a.) She further asserted that

one could stand on her property and hear someone speaking in a normal talking voice at the site of the proposed parking lot. (*Id.* at 193a.) Other residents expressed concern over the amount of traffic that would be generated by the use, particularly on Libhart Mill Road, which is a windy road that is not heavily traveled. (*Id.* at 168a, 173a, 179a.) One resident, for example, lives at a nearby intersection and estimated 150-250 cars would travel through the "very high traffic corner[]" in a 30- to 45-minute span. (*Id.* at 168a.) Objector Geiselman testified that a wedding/event venue for 250 people "will absolutely have an effect . . . on the character and enjoyment of our neighborhood." (*Id.* at 204a.) Mr. Hewitt advised that Applicants were seeking to contract with transportation companies to lessen the impact on traffic. (*Id.* at 170a.) Chairman advised traffic would be a concern addressed in the land development process. (*Id.* at 218a.) Chairman also asked for a show of hands from attendees who were concerned with noise, and 24 attendees raised their hand. (*Id.* at 213a-14a.) Twenty-six people raised their hands when asked if they were concerned about traffic. (*Id.* at 218a.) Objector McConkey questioned the true principal use of the Property, as did several other residents. (*Id.* at 162a, 165a-66a, 222a.) A few other residents expressed concern about the proposal's environmental impact, lighting, and people at events trespassing onto neighboring properties. (*Id.* at 173a, 194a, 215a.) One person spoke in support of the proposal: the individual who currently farms the land, with whom Applicants have discussed planting the grapes and other wine-producing crops. (*Id.* at 191a.)

At the continued hearing on January 18, 2018, Mr. Hewitt testified it would take one year to get grape plants to plant. (*Id.* at 245a-46a.) According to Mr. Hewitt, Applicants would grow 5 to 12 acres total. (*Id.* at 248a.) When discussing

5

whether to impose some sort of deadline for planting crops, Mr. Hewitt said Applicants would agree to plant at least two acres of grapes by June 1, 2020. (*Id.* at 310a-11a.) In the meantime, because the liquor laws permit a winery to purchase fruit or juices for use in winemaking, Mr. Hewitt said Applicants "hope[d] to have everything on the winemaking side ready to go by, give or take, the end of this year, beginning of next year." (*Id.* at 247a.) Mr. Hewitt also revisited Applicants' plans in terms of noise control. (*Id.* at 256a.) He testified the vinyl siding on the barn would be removed, 2½-inch insulated foam core would be installed on all the barn's walls, and new tin siding would be installed. (*Id.*) He reiterated that a sound system would be installed that Applicants control, which is similar to a system used at another venue, which hosts events under a tent. (*Id.* at 257a.) Aside from the ceremony itself, no other outdoor events were planned, he said. (*Id.* at 259a.) Although a deck would be constructed at the back of the barn, it was meant as a means of ingress and egress and, at most, would be used to serve hors d'oeurves. (*Id.* at 260a.) Mr. Hewitt presented a letter from the executor of the estate that owned the Property expressing support for the proposal. (*Id.* at 269a.)

On the second day of the hearing, a number of residents and Objectors testified in opposition to the proposal, voicing complaints about noise and traffic. Objector Johnson testified that while a tractor may have a higher decibel rating, a tractor would be operating for only a short time, not several hours, as is the case for a wedding with music. (*Id.* at 313a.) In response to a poll by Chairman, 27 attendees raised their hand when asked if they were concerned with noise. (*Id.* at 326a.) A number of other residents, some of whom testified at the first hearing, expressed various concerns, ranging from concern about drunk drivers leaving

6

events at the Property to enforcement of noise complaints to compliance with historic overlay district requirements. (*Id.* at 319a-20a, 324a, 336a.) Objectors McConkey and Geiselman again stated the real principal use was a winery not a vineyard. (*Id.* at 302a, 338a.) Another resident stated that because there was no vineyard or even crops planted yet, Applicants were "putting the cart before the horse." (*Id.* at 327a-28a.)

At the close of the hearing, Chairman asked Solicitor to confirm that light, noise, and traffic concerns would also be addressed as part of a land development plan, to which Solicitor responded they would. (*Id.* at 359a.) Following deliberations, the Board voted 3-2 to deny the Application. (*Id.* at 375a-77a.)

### B. Board Decision

In its written decision that followed, the Board found the proposal was consistent with Applicants' description. (Board Decision, Findings of Fact (FOF) ¶¶ 6, 8, 12-18.) The Board also found that over a dozen witnesses, many of whom were adjoining or nearby property owners, testified that the proposal would diminish the use and enjoyment of their properties. (*Id.* ¶ 19.) The Board wrote:

> Of specific concern were (a) the noise that would be generated by the attendance of more than 200 people at events like weddings, and (b) the traffic on Libhart Mill Road and other nearby roads that would be generated by that number of attendees, and by the regular use of the Property as a place of business.

(*Id.*) The Board found the Property fronted Libhart Mill Road and had direct ingress to and egress from that road. (*Id.* ¶ 4.) The existing house and barn are situated in proximity to Libhart Mill Road, just 20 feet or less from the cartpath.

7

(*Id.* ¶ 7.) At least two neighboring houses are located within 150 feet of the barn. (*Id.*)

The Board further found that the witnesses testified the area, which is known as Owl Valley, "is a quiet area, with an historic residential and agricultural character, and that Libhart Mill Road is [a] quiet country road not subjected to high volumes of traffic." (*Id.* ¶ 20.) Only residential and agricultural uses exist within a one-half mile radius, and "no nearby uses accommodate anywhere near the large number of patrons and vehicles projected." (*Id.* ¶ 21.) The Board found that another winery that was approved three years ago that is a mile from the Property was distinguishable from this Application because it is set back further from the road (200 feet) and is further from the nearest residence (500 feet), is a larger lot, and has natural topographical features that act as a screen. (*Id.* ¶ 23.) The noise and traffic generated by the proposal would adversely impact neighboring property owners. (*Id.* ¶ 22.)

Based upon these findings, the Board concluded that Applicants met the specific criteria in the Ordinance related to minimum lot size; minimum wine-producing crop size, which would be planted by June 30, 2020; adequate water and sewage; and no restaurant-style food or cooked to order food would be served. (Board Decision, Conclusion of Law (COL) ¶ 3.A-D.) However, the Board concluded Applicants did not "sufficiently demonstrate[] a plan for noise control that will minimize noise effects on the surrounding community," as the Ordinance required. (*Id.* ¶ 3.E.) The Board interpreted "the Ordinance to require that event noise . . . be adequately addressed as a prerequisite to conditional use approval." (*Id.*) The Board concluded:

> [T]hat event noise produced within the barn, or upon the deck attached to the barn, or in the planned parking areas, will be audible

8

on neighboring properties. The Board also conclude[d] that such noise, along with the noise generated by vehicle traffic to, from and upon the Property during events, being unusual to and not in conformance with the character of Owl Valley, will disrupt the surrounding community. While the Board acknowledge[d] that Winery, Type B, uses are permitted as conditional uses in the RA Zone, not all RA Zone locations are appropriate for such use; in this case, the subject Property's close proximity to other residences, and the subject Property's location in Owl Valley on low-volume Libhart Mill Road, make the Property inappropriate for use as a Winery, Type B.

(*Id.*)

In addition to finding Applicants did not meet the specific criteria of the Ordinance, the Board found Applicants did not meet all of the general criteria for this type of use. (*Id.* ¶ 5.A-F.) Although the Board found the proposed use was "consistent with the purpose and intent of the [RA] Zone[,]" it also found the proposed use would generate excessive noise and traffic that would "detract from the use and enjoyment of adjoining or nearby properties" and would "change the character of . . . Owl Valley, which has never included any high-traffic, high-attendance uses." (*Id.* ¶ 5.A-C.) Accordingly, the Board concluded Applicants did not meet their burden of proof and denied the Application. (*Id.* ¶ 6.)

## C.    Appeal to common pleas

Applicants appealed the Board Decision to common pleas, which accepted no new evidence. Based upon briefs filed by Applicants, the Board, and Objectors, who intervened, common pleas granted Applicants' appeal and reversed the Board's Decision. Common pleas noted the Board denied the Application primarily because of noise and traffic concerns. (Opinion (Op.) at 5.) Common pleas concluded Applicants satisfied the Ordinance's requirements for noise

9

control because they planned to insulate the barn; to hold events, except for ceremonies, inside the barn; to install a sound system they controlled; to address any noise complaints; to move the parking area behind the barn to block noise; and to comply with all other recommendations or conditions imposed by the Board. (*Id.* at 6.) As for traffic, common pleas noted the Ordinance had no specific criteria except a plan for parking, which was satisfied. (*Id.*) Furthermore, noise and traffic concerns would be addressed in the land development phase. (*Id.*)

Because Applicants met the specific criteria in the Ordinance, common pleas concluded the burden shifted to Objectors to demonstrate that the proposal would be detrimental to the surrounding community. (*Id.*) Despite multiple chances to do so, common pleas concluded Objectors did not present evidence to satisfy this burden, such as "noise studies, police records, property valuations, traffic studies, or any type of substantive evidence upon which their fears were based[.]" (*Id.* at 6-7.) "Instead all that was provided," common pleas found, "was testimony of personal opinions and fears that the noise [and] traffic [will] disrupt the community." (*Id.* at 7.) Common pleas concluded:

> A winery, and any accessory, being a conditional use of the RA zoning plan, cannot on its own detract from the character and use of the community. Objectors provided no substantive evidence, besides conjecture, that the proposed winery would disrupt the nature of the community. [Applicants] satisfied their burden and as there was no substantive evidence to the contrary, the Board . . . abused its discretion in denying [Applicants' A]pplication.

(*Id.*)

10

For the foregoing reasons, common pleas granted Applicants' appeal and reversed the Board's Decision. (*Id.*) Objectors now appeal to this Court.[5]

## II.   PARTIES' CONTENTIONS

### A.   Objectors' arguments

On appeal,[6] Objectors raise three issues. First, they allege common pleas erred in reversing the Board's denial of the Application because Applicants did not provide a suitable plan for noise control. Second, they allege common pleas erred in concluding that the Board's findings related to the proposal changing or negatively impacting the community were not supported by substantial evidence. Third, Objectors allege common pleas erred because the principal use of the Property would be a winery not a vineyard, and wineries are only permitted as accessory uses.

Objectors argue that the Ordinance requires a detailed written plan to address noise control, which includes an explanation of how noise complaints will

---

[5] While Applicants' appeal was pending before common pleas, Applicants filed an Amended Application for a conditional use with the Board, proposing to construct a building on the Property to host weddings and events, instead of using the barn, as proposed here. The Board ultimately denied that request, which common pleas likewise reversed. The Amended Application is the subject of a separate appeal, *Hewitt v. Hellam Township Board of Supervisors* (Pa. Cmwlth., No. 1518 C.D. 2018, filed June 26, 2019), which was argued seriately with this appeal.

[6] Because common pleas took no additional evidence, our review is limited to determining whether the Board erred as a matter of law or abused its discretion. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1211 n.8 (Pa. Cmwlth. 2014). An abuse of discretion occurs if the Board's findings are not supported by substantial evidence. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *River's Edge Funeral Chapel & Crematory, Inc. v. Zoning Hearing Bd. of Tullytown Borough*, 150 A.3d 132, 142 (Pa. Cmwlth. 2016).

be addressed. Objectors contend Applicants did not submit a written plan or, for that matter, any evidence of their plans for noise control at the hearings. In addition, Objectors urge that the Board's interpretation of its own Ordinance is entitled to deference, and because Applicants did not meet their burden of proof, the Board properly denied the Application.

Objectors also argue that Applicants did not meet their burden of demonstrating that the proposed use will not detract from the use or enjoyment of nearby properties or change the character of the neighborhood. Objectors further assert that, contrary to common pleas' opinion, they did present specific information concerning the impact of lights, noise, and traffic on their quiet neighborhood. Objectors note that the Board considered other event venues, such as the one proposed by Applicants, and determined that those are located on busier roads than Libhart Mill Road. In addition, Objectors claim other wineries differ from the one Applicants propose because they are located farther away from neighboring homes and are not located in a valley. In short, Objectors argue there is substantial evidence to support the Board's finding related to the impact of the proposed plan on the community.

Lastly, Objectors argue that wineries are only permitted as accessory uses to the principal use of a vineyard. The proposed winery, Objectors claim, cannot be incidental to a vineyard that does not yet exist and will not exist for another three to five years. They point out that the soil has not yet been tested and no plants have been ordered. Objectors argue that the bulk of the testimony focused on the winery, which is further evidence that the winery is the principal use, not a vineyard. Although the Board did not rely upon this as a basis for its decision, Objectors assert this Court can affirm the Board's Decision on other grounds.

12

**B.** **Board's arguments**

The Board joined in Objectors' brief, but filed a separate brief to emphasize that, in its opinion, common pleas erred by not affording the Board discretion as factfinder, responsible for weighing the evidence and making credibility determinations. Like Objectors, the Board asserts Applicants did not meet their burden of showing compliance with the objective requirements of the Ordinance, namely, the noise control plan requirement. The Board also disputes that its findings are not supported by substantial evidence, citing the testimony of Objectors and other residents who opposed the Application. The Board notes other venues are located on feeder roads, whereas the access road here is not traveled as much. It also notes that 10 residents live within 500 feet of the barn, the closest of which is just 180 feet away. In addition, the Board cites the testimony about parking and lights associated therewith. Although it acknowledges that testimony about the impact on the surrounding neighborhood cannot be speculative, the Board contends an expert witness is not required and that the witnesses here raised specific issues. It maintains the cumulative, credited, non-speculative evidence supports the Board's findings.

The Board also argues that common pleas erred by not providing deference to the Board's interpretation of its own Ordinance. It interpreted the Ordinance as requiring not just a noise control plan to be presented, but also that the noise control plan adequately address noise control as a prerequisite to conditional use approval. The Board asserts its interpretation is reasonable and promotes the purpose of an RA Zone. It argues Applicants did not have a noise control plan, except for "vague assurances and possibilities." (Board Brief (Br.) at 13.)

13

## C. **Applicants' arguments**

Applicants respond that the inclusion of a conditional use in an ordinance indicates a legislative determination by the governing body that the use is consistent with the public health, safety, and welfare. It also argues that any adverse impacts must be greater than those normally associated with uses of the same type. They also note that the Board's review should have been limited to land use, and not land development, issues. With these principles in mind, Applicants argue they have satisfied their burden, but Objectors have not. They claim they submitted a written noise plan with the Application and presented testimony regarding the plan at the hearings. By interpreting the Ordinance to prohibit **any** audible noise on neighboring properties, Applicants argue, the Board erred. They also argue that Objectors' evidence related to noise was speculative, and there is no evidence the sound generated by this Winery, Type B would be different from any other Winery, Type B. Accordingly, Applicants claim the Board erred in denying the Application.

Applicants also contend that the Board improperly placed the burden on them to satisfy the subjective criteria of the Ordinance when the burden properly belonged to Objectors. Further, while the Board attempts to paint the issue as one involving credibility and evidentiary weight, Applicants contend the issue is, instead, whether competent, substantial evidence exists to support the Board's findings. According to Applicants, Objectors did not satisfy their burden because much of their evidence was speculative or conjectural, which is insufficient under the law to carry their burden. Applicants maintain that many of the concerns would also exist with other Wineries, Type B. Applicants assert they intend to

maintain farming on the Property, so it will not be converted to a non-agricultural use. Applicants also contend that the Board incorrectly treated Owl Valley as a residential area, although it is located in an RA Zone. Applicants note that the Ordinance cautions residents that they must be prepared to accept agricultural uses in an RA Zone.

Finally, Applicants argue that the principal use of the Property is a vineyard, to which the Winery, Type B, is an accessory use. They acknowledge that because the issue was not raised at the hearings, there was little testimony concerning the same. However, Applicants note that a minimum of two acres will be planted with grapes, while the other acreage is used for other crops. Applicants agree that they cannot open the winery until the vineyard is planted, which is all that the Ordinance requires. They also note that they would not be eligible for an occupancy permit until such occurs. They also point out that less than 1.25 acres of the Property would be used for winery purposes. Applicants ask the Court to affirm common pleas' Order.

## III.    DISCUSSION

### A.    General Legal Principles

As a preliminary matter, a conditional use is a use that is "specifically recognized by the [municipality] as consistent with the zoning plan." *Aldridge v. Jackson Twp.*, 983 A.2d 247, 253 (Pa. Cmwlth. 2009). It is similar to a special exception, with the primary difference being which entity reviews such requests. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1212 (Pa. Cmwlth. 2014). Conditional uses are reviewed by the municipal

15

governing body, and special exceptions are reviewed by the local zoning hearing board. *Id.*

The applicable zoning ordinance provides the criteria upon which conditional uses are to be reviewed. *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). Each ordinance differs, but usually they provide specific, objective criteria and general, subjective criteria. *Williams Holding*, 101 A.3d at 1212-13. Whether a criterion is specific and objective or general and subjective determines which party bears the burden of persuasion. *Id.* at 1212-13. An applicant bears the initial burden of demonstrating that its proposed use meets the specific, objective criteria of an ordinance. *Id.* at 1212. Once an applicant meets its prima facie burden, "a presumption arises the proposed use is consistent with the general welfare," *Aldridge*, 983 A.2d at 253, and "the application must be granted unless the objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare," *In re Thompson*, 896 A.2d at 670. Whether a proposed use is a detriment to public health, safety, and welfare is an example of a general, subjective criterion. *Williams Holdings*, 101 A.3d at 1213. When a criterion "is nonobjective or too vague to afford the applicant knowledge of the means by which to comply, the requirement is either one that is not enforceable . . . or, if it relates to public detriment, the burden shifts to the objector," even if the ordinance appears to place the burden on the applicant. *Id.* at 1213, 1217. The Court has explained the rationale behind this shifting burden of persuasion, stating that "it would be manifestly unfair to require [an applicant] to prove conformity with a policy statement, the precise meaning of which is supposed to be reflected in specific requirements." *Bray v. Zoning Bd. of*

*Adjustment*, 410 A.2d 909, 911 (Pa. Cmwlth. 1980) (emphasis omitted) (quoting *Appeal of Baker*, 339 A.2d 131, 135 (Pa. Cmwlth. 1975)).

The burden on the objectors to rebut the presumption that a proposed use is consistent with the general welfare is a heavy one. *Marr Dev. Mifflinville, LLC v. Mifflin Twp. Zoning Hearing Bd.*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017).[7] It is not enough for objectors to make "bald assertions" or proffer personal opinions about the perceived ill effects of the proposed use. *In re Cutler Grp., Inc.*, 880 A.2d 39, 43 (Pa. Cmwlth. 2005). Nor can they "meet their burden by merely speculating as to possible harm." *E. Manchester Twp. Zoning Hearing Bd. v. Dallmeyer*, 609 A.2d 604, 610 (Pa. Cmwlth. 1992). "[I]nstead [they] must show a high degree of probability that the proposed use will substantially affect the health and safety of the community." *Id.*; *see also Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 590 A.2d 65, 71 (Pa. Cmwlth. 1991) (finding that the objectors raised "mere possibilities[, falling] . . . short of [a] high degree of probability"). Furthermore, "the degree of harm required to justify denial of the conditional use must be greater than that which normally flows from the proposed use." *In re Cutler Grp.*, 880 A.2d at 43.

With these principles in mind, we turn to Objectors' arguments.

### B.     Specific, objective criteria

Section 490-130.1.B of the Ordinance sets forth a number of specific, objective criteria that Applicants must satisfy, which include:

---

[7] Although *Marr Development* involved a special exception, "the law regarding conditional uses and special exceptions is virtually identical," and our Court has held "the burden of proof standards are the same for both." *In re Thompson*, 896 A.2d at 670.

(1)  Minimum lot area:  10 acres.

(2)  Minimum wine-producing crop requirement:  At least two acres of the lot on which the Type B winery is located shall be planted on the same parcel of land which is permitted for and being utilized for agriculture.

(3)  The applicant shall furnish evidence that adequate water supply and sewage disposal can be provided.  If public sanitary sewer is not available, then the on-site sewage disposal system shall be designed and sized to accommodate the proposed facility.

(Ordinance, § 490-130.1.B.)  In addition, the Ordinance imposes various specific criteria on winery events.  (*Id.*)  Relevant for this appeal is a plan for control of noise.  That provision provides:

The applicant shall provide a detailed written plan addressing . . .

. . . .

Control of noise:

[i] The plan for noise control shall take into account and use topography and/or buildings to minimize noise effects on the surrounding community.

[ii] Outdoor functions shall be confined to an area within the interior of the property to minimize the impact of noise and other activities to adjacent and/or surrounding properties.

[iii] Explanation of how amplified sound and noise complaints will be addressed.

(*Id.*)

If Applicants fail to meet these criteria, our inquiry ends as they have not met their prima facie burden.  Here, the Board concluded Applicants satisfied all of the specific criteria except for noise control, (Board Decision, COL ¶ 3.E), but

18

common pleas disagreed, (Op. at 6). We agree with the Board that Applicants did not satisfy the specific, objective criteria related to noise control, but not for the reasons found by the Board. As set forth above, the Ordinance requires an applicant to submit "a **detailed** written plan[,]" which addresses, among other things, an "[e]xplanation of **how** amplified sound and **noise complaints will be addressed.**" (Ordinance, § 490-130.1.B(e) (emphasis added).) Here, the Application does not contain a detailed written plan that explains how noise complaints will be addressed. In terms of noise, the Application provides:

> The events will be mainly indoor events, except for outdoor wedding ceremonies, and other approved uses as set forth for [W]inery B. These will take place on the interior part of the property to minimize noise. We also plan to insulate the barn to reduce noise.

> We will be installing a sound system that we can control. Our contract will include verbiage so that those renting understand noise concerns. We will be closely monitoring [sic.]

(R.R. at 4a.)

These actions – holding events on the interior of the property, insulating the barn, and advising customers of noise concerns – are geared at minimizing or reducing noise in an attempt to prevent noise complaints from occurring in the first place. However, the Application must include an "[e]xplanation of how amplified sound and noise complaints will be addressed[]" after a complaint is received, as the Ordinance requires. (Ordinance, § 490-130.1.B(e).) Arguably, installing a sound system that Applicants control or Applicants monitoring events closely may be intended to address noise concerns. They also can be preventative steps aimed

at squelching noise complaints before they happen.[8]  Even if we were to accept these actions as methods of addressing noise complaints, we cannot hold that these constitute a **detailed** plan, as required.  (*Id.*)  Nor can we accept Applicants' testimony at the hearings as to how noise complaints will be addressed because the Ordinance requires the plan be written.  (*Id.*)  Therefore, we cannot conclude that the Applicants satisfied the specific, objective criteria of the Ordinance.

However, we must caution that the Board's reasoning for concluding the specific, objective criteria of the Ordinance was not met is also flawed.  In determining that the Applicants did not meet the specific, objective criteria related to noise control, the Board interpreted the Ordinance as "requir[ing] that event noise such as music, conversation, public announcements, people celebrating, and the like, must be adequately addressed as a prerequisite to conditional use approval."  (Board Decision, COL ¶ 3.E.)  Because noise "will be audible on neighboring properties[]" and this noise is "unusual to and not in conformance with the character of Owl Valley," the Board determined the Property was not an appropriate site for a Winery, Type B.  (*Id.*)

There are several issues with the Board's reasoning.  First, the Board requires more than the Ordinance requires.  Applicants need a plan that **minimizes** noise on neighboring properties, not **eliminates** it.  (Ordinance, § 490-130.1.B(e).)  The Board's own findings demonstrate that "the barn will be improved with soundproofing, . . . all entertainment (bands, disc jockeys, etc.) shall be provided inside the barn only[,]" and "Applicants intend to take steps to limit the escape of

---

[8] At oral argument, counsel for Applicants conceded that the Application did not include a written plan about how noise complaints would be addressed.  Counsel indicated it was obvious or implied that the Applicants would address any such concerns.

noise from the inside of the barn while the deck is in use." (Board Decision, FOF ¶¶ 6, 14.) To the extent the Board sought more detailed design plans, we note that "[z]oning only regulates the *use* of land and not the particulars of development and construction." *In re Thompson*, 896 A.2d at 671 (emphasis is original) (citation omitted); *see also In re Richboro CD Partners, L.P.*, 89 A.3d 742, 749 (Pa. Cmwlth. 2014) (holding an applicant is not required to provide specific design details of its proposed development at the conditional use stage); *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009) (holding same). While a board's interpretation of its own ordinance is generally entitled to deference, "[t]he rules of statutory construction are applicable to statutes and ordinances alike." *In re Thompson*, 896 A.2d at 669. Thus, when the words are free and clear of ambiguity, the letter of it should not be disregarded under the "pretext of pursuing its spirit." Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921; *see also Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 188-89 (Pa. Cmwlth. 2007) (concluding it was error to "substitut[e] . . . what it believed the [z]oning [o]rdinance should state for that which was actually legislated by the [t]ownship"). The general rule towards deference

must sometimes bend to [a] second rule, found in Section 603.1 of the [Pennsylvania Municipalities Planning Code[9]], which provides:

"[i]n interpreting the language of the zoning ordinance to determine the extent of the restriction upon . . . the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body,

---

[9] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 48 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1.

in favor of the property owner and against any implied extension of the restriction."

*Williams Holding*, 101 A.3d at 1213 (quoting 53 P.S. § 10603.1). In short, "ordinances are to be construed expansively, affording the landowner the broadest use and enjoyment of its land." *Aldridge*, 983 A.2d at 253. In addition, "it would be manifestly unfair to require" an applicant to conform to specific, objective criteria that are not clearly defined. *Bray*, 410 A.2d at 911; *see also Williams Holdings*, 101 A.3d at 1213, 1217 (explaining when a criterion "is nonobjective or too vague to afford the applicant knowledge of the means by which to comply, the requirement is either one that is not enforceable . . . or, if it relates to public detriment, the burden shifts to the objector").

Second, the Board applied the wrong standard. It concluded the noise was "unusual to and not in conformance with the character of Owl Valley[.]" (Board Decision, COL ¶ 3.E.) It is not enough to show that the effects of this Application will impact the surrounding neighborhood in **some** way; rather "the degree of harm . . . must be **greater than that which normally flows** from the proposed use." *In re Cutler Grp.*, 880 A.2d at 43 (emphasis added).

Third, the Board erred in concluding that "not all RA Zone locations are appropriate" for a Winery, Type B. (Board Decision, COL ¶ 3.E.) The problem with this statement is that it does not take into consideration what the governing body already determined when it enacted the Ordinance: Winery, Type B is a conditional use in all RA Zones, and this designation "evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community." *In re Cutler Grp.*, 880 A.2d at 42. Furthermore, the Ordinance expressly provides "[r]esidential uses are severely limited, and any future inhabitants in [an RA Zone]

22

must be willing to accept the impacts associated with normal farming practices. Owners, occupants and users of property within [an RA Zone] must be prepared to accept such impacts from [the] agricultural operations . . . ." (Ordinance, § 490-12.A(1).)  If the current Board wants to exclude a Winery, Type B, from RA Zones, it can do so but it must follow the legislative process and amend the Ordinance enacted by its predecessors,[10] not selectively deny conditional use applications that otherwise meet the Ordinance's requirements.

## IV.   CONCLUSION

Although the Board's interpretation was erroneous, common pleas' conclusion that Applicants satisfied the specific, objective criteria in the Ordinance related to noise control was also in error.  The Application was devoid of a "detailed written plan addressing . . .  how amplified sound and noise complaints will be addressed."  (Ordinance, § 490-130.1.B(e).)  Because Applicants did not satisfy the specific, objective criteria of the Ordinance for a conditional use, they did not meet their prima facie burden.  Accordingly, we reverse common pleas' Order.

_____

**RENÉE COHN JUBELIRER,** Judge

---

[10] We note the Ordinance was just amended in 2014 to include the provisions dealing with a Winery, Type B, that are at issue in this appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William and Wendolyn Hewitt     :
                                             :

                   v.                      :

                                        :   No. 1342 C.D. 2018

Hellam Township Board of Supervisors  :

                                            :

                   v.                      :

                                            :

Gary Geiselman, Suzanne McConkey,  :
Adrienne Johnson, and Devin Winand,  :
                         Appellants    :

# **O R D E R**

**NOW**, June 26, 2019, the Order of the Court of Common Pleas of York County, dated September 4, 2018, is **REVERSED.**

_____
**RENÉE COHN JUBELIRER,** Judge